UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Louis Bellamy, as Trustee for the next of kin of Lucas John Bellamy, Deceased,<br><br>        Plaintiff,<br>vs.<br><br>Roselene M. Omweri in her individual capacity, Kay P. Willis in her individual capacity, Michelle D. Diaz in her individual capacity, Lucas Weatherspoon in his individual capacity, Hennepin Healthcare System, Inc., and Hennepin County, Minnesota,<br>        Defendants. | Civil No. 24-CV-0170 (DWF/TNL)<br><br>**Petition for Distribution of Wrongful Death Proceeds**<br><br>**[Unredacted Version Filed Under Seal]** |

In accordance with the provisions of Minnesota General Rule of Practice 144, which this Court traditionally applies in these proceedings, Petitioner Louis Bellamy ("Petitioner"), as trustee for the next of kin of Lucas John Bellamy ("Lucas"), states and alleges for his Petition as follows:

    1.    Decedent Lucas was born on ▮▮▮▮▮▮▮, 1981, in Minneapolis, Minnesota.

    2.    Lucas died on July 21, 2022, in Minneapolis, Minnesota.

    3.    At the time of his death, Lucas's permanent address was 985 18th Ave SE, Minneapolis, MN 55414.

    4.    Petitioner was appointed Trustee for Lucas's next of kin on January 6, 2023. A copy of the Order appointing Petitioner as Trustee is attached hereto as Exhibit A.

    5.    Petitioner is Lucas's father.

6. The names, ages, relationship and addresses of Lucas's next of kin are:

| Name | Age | Relation | Address |
|---|---|---|---|
| Louis Bellamy | 80 | Father | ███ |
| Colleen Bellamy | 79 | Mother | ███ |
| Sarah Bellamy | 45 | Sister | ███ |
| G███ B███ (G.B.) | 11 | Son | ███ |

7. Petitioner has identified no other next of kin required to receive notice of this Petition, and no other next of kin have provide the trustee with a claim for wrongful death benefits.

**Summary of the Case, Procedure, and Settlement**

8. Lucas was detained at the Hennepin County Jail, where he died on July 21, 2022.

9. On August 4, 2022, Petitioner retained Storms Dworak LLC f/k/a Newmark Storms Dworak LLC ("SD") to investigate the circumstances surrounding Lucas's death.

10. Following the initial investigation, SD assisted Petitioner with obtaining appointment as the trustee for Lucas's next of kin, and Petitioner was appointed as trustee for Lucas's next of kin on January 6, 2023. *See* Exhibit A, Order Appointing Trustee.

11. Petitioner then retained SD and Oleisky & Oleisky, P.A. ("Oleisky") (collectively, "Petitioner's Counsel") to represent him on behalf of Lucas's next of kin pursuant to the Retainer Agreement attached. *See* Exhibit B, Retainer Agreement.

12. Petitioner's Counsel worked extensively to investigate and analyze not only

2

Lucas's death, but to also investigate prior deaths at the Hennepin County Jail. It took approximately a year before all information related to Lucas's death was released, as there were ongoing investigations into his death that delayed the release of data.

13. Following their investigation and analysis, Petitioner's Counsel retained and conferred with multiple medical experts in order to make the necessary allegations by affidavit to support the supplemental state law medical malpractice claims in this action.

14. Petitioner ultimately filed a 43-page Complaint on January 23, 2024, alleging individual civil rights violations, municipal violations pursuant to *Monell* and *Canton* and a supplemental state law wrongful death claim grounded in both medical malpractice and ordinary negligence.

15. In response to Petitioner's Complaint, Defendants filed a motion to dismiss on April 19, 2024.

16. Following additional analysis and strategic decision by Petitioner's Attorneys, Petitioner filed a 50-page First Amended Complaint on May 10, 2024.

17. Petitioner removed the *Monell* and *Canton* allegations from the original Complaint, and instead focused on the individual violations in even greater detail.

18. Petitioner also alleged a supplemental survival action pursuant to Minn. Stat. § 573.02, subd.

19. Rather than seek dismissal, the Defendants then answered the First Amended Complaint.

20. The parties also agreed to mediate this matter with private Mediator Karen Kingsley.

3

21. The parties mediated this matter into the evening on September 9, 2024, but did not reach a settlement.

22. The parties continued to negotiate, and Petitioner continued working with Petitioner's Counsel and next of kin to assess the benefits that different settlement values would ultimately have, particularly with respect to the benefits a structured settlement at solid interest rates would bestow upon Lucas's minor child, G.B.

23. The parties continued to negotiate and ultimately reached a global settlement in the amount of Three Million Four Hundred Thousand Dollars ($3,400,000.00) that was recently approved by the Hennepin County and Hennepin Healthcare boards.

24. This settlement is believed to be one of the largest settlements ever reached in Minnesota for a death occurring in a jail.

### Attorneys' Fees and Costs and Compensation of Trustee

25. Petitioner's representation by Petitioner's Counsel is governed by the terms of the Retainer Agreement attached as Exhibit B. The Retainer Agreement provides for a legal fee in the amount of 40% of the gross recovery, whether as the result of settlement or trial. The Retainer Agreement further provides that the fee would be split 80% to SD and 20% to Oleisky if resolved prior to a motion for summary judgment. The Retainer Agreement further provides for reimbursement of out-of-pocket costs.

26. Petitioner's Counsel is seeking payment of its 40% contingency fee, apportioning $1,088,000.00 to SD and $272,000.00 to Oleisky.

27. Petitioners' Counsel has incurred approximately $12,000.00 in expenses

prosecuting this matter but are waiving collection of out-of-pockets costs.

28. Petitioner's Counsel has also agreed to pay attorneys' fees up to $10,000.00 for the creation of the Settlement Preservation Trust of G█████ B█████.

29. The Settlement Preservation Trust of G█████ B█████ is being created through the efforts of Randy Boggio ("Boggio"), of Maser Amundson & Boggio, P.A.

30. Ultimately, the effective attorneys' fee will be slightly less than 40% following the waiver of costs and payment of fees for creation of the trust.

31. SD took the lead role in this litigation and partner Jeffrey Storms ("Storms") served as lead counsel. Storms is a *magna cum laude* graduate from the University of St. Thomas School of Law. Storms specializes in challenging and high-profile civil rights litigation that often include a further subspecialty involving the combination of civil rights and medical malpractice claims that most often occur in the correctional/institutional and foster care settings. Storms has obtained multiple reversals at the Eighth Circuit Court of Appeals in civil rights matters. *See, e.g., Doe v. N.H.*, 11 F.4th 633 (8th Cir. 2021) and *Michael v. Trevena*, 899 F.3d 528 (8th Cir. 2018). Storms has been named an "Attorney of the Year" for his civil rights and related work four times, including for his work in *Broadus v. Johnson*, 16-cv-1211 (D. Minn.) (combination of civil rights and state claims for the wrongful death of a foster child) and *Schaffer v. Chauvin*, 20-cv-1577 (D. Minn.) (representing the interests of George Floyd's next of kin for Floyd's wrongful death). Storms has served as an adjunct professor at the University of St. Thomas School of Law, teaching Section 1983 Litigation. Storms has been named one of Minnesota's Top 100 Super Lawyers by Super Lawyer Magazine each of the past

three years.

32. Jill Oleisky is a 1997 graduate of William Mitchell College of Law. Ms. Oleisky's law practice is concentrated in the area of criminal defense. She has had numerous court and jury trials in Minnesota. Ms. Oleisky has contracted as a substitute Hennepin County Public Defender since 2014 representing clients charged with misdemeanor and gross misdemeanor offenses. Ms. Oleisky has been recognized as a Super Lawyer by MN Law and Politics magazine for the last dozen years. She is a member and past president of Minnesota Society of Criminal Justice. She was president of the Amdahl Inn of Court from 2020-2021. Since 2022, Ms. Oleisky has been the Executive Director of Minnesota Association of Criminal Defense Lawyers, an organization with over 350 members throughout Minnesota. Ms. Oleisky served as Lucas's criminal defense attorney for several years. She worked on all aspects of the case from identifying the initial legal issues, assisting the Bellamy family in forming a legal team in the immediate aftermath of Lucas's death, and providing advice and insight throughout the litigation and settlement process based upon her 27 years of practicing law.

33. Courts routinely approve a 40% contingency fee in similar civil rights litigation. *See, e.g.,* Exhibit C, *Hunziker v. Doherty et al.*, 20-cv-2188 (NEB/TNL); *see also* Exhibit D, *Broadus v. Johnson*, 16-cv-1211 at *5 (WMW/SER) (D. Minn., filed Jan. 3, 2019) (approving 40% fee and collecting cases approving 40% fee); Exhibit E, *Bunker v. Fitzgerald*, No. 20-cv-1456 (D. Minn., filed Oct. 14, 2021) (45% fee on civil rights settlement); *Huffman v. Pepsi Cola Bottling Co. of Mpls. and St. Paul*, C7-94-2404, 1995

6

WL 434467, at *8 (Minn. Ct. App. July 25, 1995) (noting that a contingency fee is typically 1/3 of amount recovered plus reasonable costs and disbursements but "[t]his one-third of the amount recovered to go as high as 40% or perhaps even 50% (depending on local custom), in complicated medical malpractice or complicated products liability cases.").

34. Ultimately, Petitioner believes that a contingency fee in the approximate amount of 40% is reasonable given the specialized experience of counsel, the significant result achieved, the diligent efforts expended, and the substantial and unknown risk taken by counsel at the outset of this litigation.

35. Petitioner is not seeking any fees or costs from the recovery for serving as trustee.

## Funeral and Burial Expenses

36. Petitioner seeks funeral and burial expenses for himself, Colleen Bellamy, and Sarah Bellamy in the amount of $10,000.00 each, which also accounts for the celebration of life the family held in Lucas's honor. This amount is an approximation, but Petitioner does not understand there to be any objection from the next of kin with this value.

## Liens

37. There are no liens to resolve from this settlement.

## Distribution to Next of Kin

38. After deducting attorneys' fees and funeral expenses, a total of $2,010,000 is available to distribute to Lucas's next of kin.

39. Lucas had close relationships with each of the next of kin identified above, and each next of kin has lost substantial support from Lucas; however, the primary focus is placed on supporting G.B., Lucas's minor child.

40. Petitioner proposes the following distribution:



41. The allocation of G.B.'s funds shall be as follows:



42. Hennepin Healthcare and HHSI shall pay ▅▅▅▅▅ to Pacific Life and Annuity Services, Inc. to fund Periodic Payments that will be made according to the following schedule ("the Periodic Payments"):

PAYEE: Settlement Preservation Trust of G▅▅▅ B▅▅▅



If G███ B███ dies on or before ███ 2038, benefits will be paid to the Settlement Preservation Trust of G███ B███ as follows:

Benefits will be paid to G███ B███'s beneficiary in a single lump sum. The single lump sum will be equal to 95% of the cost of an annuity contract, based on the annuity issuer's structured settlement rates in effect on the date of death, which would provide benefits equal to 100% of the remaining guaranteed payments.

If such annuity rates are not available, the commuted value shall be the present value of the remaining guaranteed payments calculated using the following interest rate: the annual effective yield based on the current bid price as reported in the Wall Street Journal for the highest yielding U.S. Treasury Note or Bond with a maturity date not exceeding the Rider Expiry Date available at the close of business on the date of G███ B███'s death plus one percent. If this date is not a business day, the rates reported on the next following business day will be used.

The obligation to make these periodic payments will be assigned under the meaning of IRC Sec. 130, to Pacific Life and Annuity Services, Inc. (the "Assignee") and funded by an annuity contract that will be issued by Pacific Life Insurance Company (the "Annuity Issuer"). The Annuity Issuer is licensed to do business in the State of Minnesota; has a financial rating equivalent to A.M. BEST CO. A+, CLASS VIII or better; is in compliance with Minn. Stat. §§ 549.30 to 549.34; and is not related to either the settling party, Hennepin County or HHSI. The annuity policy shall be issued in the name of G.B.

43. Hennepin Healthcare and HHSI shall pay $███ to Prudential Assigned Settlement Services Corporation to fund Periodic Payments that will be made according to the following schedule ("the Periodic Payments"):

PAYEE: Settlement Preservation Trust of G███ B███
███████████████████

If G███ B███ dies on or before the date that all of the Guaranteed Payments become due, 100% of any remaining and unpaid Guaranteed Payments shown on this payment schedule will be commuted and paid in a

lump sum.  The commuted value of such payments will be equal to 90% of the cost of a new annuity contract that would provide the commuted payments.  Prudential will compute this cost using annuity rates in effect on or about the date of the commuted payment for new annuity contracts that are issued for the same or similar type of business as this Certificate.  The commuted value will be paid to the last validly designated Beneficiary(ies).

The obligation to make these periodic payments will be assigned under the meaning of IRC Sec. 130, to Prudential Assigned Settlement Services Corporation (the "Assignee") and funded by an annuity contract that will be issued by The Prudential Insurance Company of America (the "Annuity Issuer"). The Annuity Issuer is licensed to do business in the State of Minnesota; has a financial rating equivalent to A.M. BEST CO. A+, CLASS VIII or better; is in compliance with Minn. Stat. §§ 549.30 to 549.34; and is not related to either the settling party, Hennepin County or HHSI.  The annuity policy shall be issued in the name of G.B.

44.    Petitioner contends and Hennepin County and HHSI do not object that the sums set forth herein constitute damages, other than punitive damages, on account of personal physical injuries and physical sickness, within the meaning of Sections 104(a)(2) and 130(c) of the Internal Revenue Code of 1986, as amended. Hennepin County, through the undersigned Chair of the County Board, delegate to the Hennepin County Administrator authority to execute any paperwork necessary for funding the Periodic Payments outlined in paragraphs 42 and 43.

45.    Petitioner's Counsel is responsible for depositing a certified copy of each annuity policy with the court administrator as soon as practicable, and for delivering copies of the annuity policies to Hennepin County and HHSI.

46.    The Periodic Payments cannot be accelerated, deferred, increased, or decreased by Trustee or any Payee; nor shall Trustee or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by

assignment or otherwise.

47. Any payments to be made after the death of G.B. shall be made to the Settlement Preservation Trust of G.B. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the respective Assignee. The designation must be in a form acceptable to the respective Assignee before such payments are made.

48. The Trust will be entitled to each periodic payment only when the payment becomes due.

49. Neither G.B. nor the Settlement Preservation Trust of G.B. shall have a right to the funding source of the annuities.

50. Neither G.B. nor the Settlement Preservation Trust of G.B. shall have the power to designate the owner of the annuities nor have any right to control or designate the method of investment of the funding medium for the annuities.

51. [redacted]

███████████████████████████████████████████████████████████████

████████████████████████████████████████

52.	For the protection of G.B. and his privacy, all documents referencing the distribution of the allocation to G.B. and other next of kin shall be filed and maintained under seal.

WHEREFORE, Petitioner prays for an Order of the Court as follows:

1.	Petitioner's proposed distribution is approved;

2.	SD is awarded attorneys' fees in the amount of $1,088,000.00;

3.	Oleisky is awarded attorneys' fees in the amount of $272,000.00;

4.	Louis Bellamy is awarded a distribution of $███████;

5.	Colleen Bellamy is awarded a distribution of $███████;

6.	Sarah Bellamy is awarded a distribution of $███████;

7.	G.B. is awarded a distribution of $███████ in the manner and subject to the terms set forth herein; and

8.	No other distribution shall be made.

**Approved as to form:**

Date: November 8, 2024				**STORMS DWORAK LLC**

/s/ Jeffrey S. Storms
Jeffrey S. Storms, #387240
Paul C. Dworak, #391070
Ryan O. Vettleson, #312915
Naomi E. H. Martin, #0402332
Joseph T. Heegaard, #0401544
222 South 9th Street, Suite 470
Minneapolis, MN 55402
Phone: 612.455.7055
Fax: 612.455.7051

jeff@stormsdworak.com
paul@stormsdworak.com
ryan@stormsdworak.com
naomi@stormsdworak.com
joe@stormsdworak.com

**ATTORNEYS FOR PLAINTIFF**

**VERIFICATION**

I, Louis Bellamy, hereby verify under the penalty of perjury under the laws of the State of Minnesota that I am the trustee for the next of kin of Lucas J. Bellamy, that I reviewed this Petition for Distribution, that to the best of my knowledge, the facts stated herein are correct, and that this Petition contains a true and correct recitation of my intentions and beliefs. This Verification was signed in Hennepin County, Minnesota on the date set forth below.

Dated: 11/9/24

/s/ Louis Bellamy
Louis Bellamy